UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

1-800-RADIATOR OF WISCONSIN, LLC,

      Plaintiff,

v.                                                         Case No. 08-C-362

1-800-RADIATOR FRANCHISE, INC., et al.,

      Defendants.

**ORDER**

      Plaintiff 1-800-Radiator of Wisconsin, LLC filed this action on April 29, 2008 alleging Defendants 1-800-Radiator Franchise, Inc. and its Chief Executive Officer Michael J. Rippey, (collectively "RFI") violated the Wisconsin Fair Dealership Law ("WFDL"), Wis. Stat. § 135.01 *et seq.*, engaged in fraudulent advertising, and made intentional misrepresentations in connection with the sale of a 1-800-Radiator franchise to Gary and Laurie Young, sole members of 1-800-Radiator of Wisconsin, LLC. The matter now comes before the Court on the Defendants' motion to stay the case and compel arbitration pursuant to the terms of the parties' Franchise Agreement. For the reasons stated herein, the Defendants' motion to compel will be granted, and the parties ordered to arbitration.

**I. Background**

      On or about August 24, 2006, the Youngs entered into a Franchise Agreement ("the Agreement") with RFI, becoming 1-800-Radiator franchisees. The Agreement granted the Youngs the exclusive right to operate under the 1-800-Radiator "System," and sell products under RFI's

trademark in a certain territory in Wisconsin located in the Fox Valley area. (Agreement, Am. Compl. ¶¶ 51-54, Ex. A.) The Agreement defines the "System" as:

> [A]n electronic network (the "Network") for maintaining close inventory management and a unique computerized customer ordering, sales and delivery database, internet marketing, telemarketing, advertising, signs and other materials, specifically designed software, equipment layout plans, product ordering and sales techniques and presentation and other business techniques, systems and procedures and an Operations Manual as described herein . . . .

(Am. Compl., Ex. A at p. 1.) The terms of the Agreement also included an arbitration clause, which provides as follows:

> 17.7 <u>Arbitration; Jurisdiction</u>.
>
> (a) Except as set forth in Subsection 17.7.(b), any unresolved dispute between the parties arising out of this Agreement shall be submitted to binding arbitration pursuant to the rules of the American Arbitration Association applicable to commercial arbitrations. Such arbitration shall be held within the county nearest Your Outlet that has a federal court. , [sic] and judgment upon the decision of the arbitrator may be entered in any court having jurisdiction over the matter.
>
> (b) Notwithstanding the foregoing, arbitration shall not be used for any dispute which involved Your continued usage of any of the Marks or the System or an issue involving injunctive relief, all of which issues will be submitted to the federal court closest to Your Outlet. You and We expressly agree that such court(s) shall have exclusive jurisdiction over any issues not subject to arbitration.

(Agreement, Section 17.7.) It is on the basis of this provision that RFI seeks to compel arbitration of this matter.

On April 24, 2008, RFI filed a demand for arbitration with the American Arbitration Association ("AAA"). Although the demand originally alleged that the Youngs had failed to pay franchise fees in the amount of $40,000, (Gierke Decl. June 18, 2008, Ex. D) a default which the parties agree has since been cured, RFI amended its arbitration petition on May 23, 2008, to allege that the Youngs breached the arbitration clause of their Franchise Agreement by filing this lawsuit,

2

and further breached the Agreement by, among other things, abandoning the franchise and failing to use their best efforts to perform under the Agreement. (Supplemental Statement of Claims, Nicosia Aff. May 28, 2008, Ex. A.) Accordingly, the parties are presently engaged in arbitration with regard to RFI's claims against the Youngs. (Nicosia Aff. ¶ 5.) RFI contends that this action should be stayed and the Youngs directed to submit their claims to arbitration as well.

The Youngs contend that the claims they have asserted against RFI "all plainly relate to the System and thus fall within the carve out language of Section 17(b) of the arbitration provision." (Br. Opp. 10.) According to the Youngs, the exemption from arbitration provided by Section 17(b) applies to "any dispute which involves" either the Youngs' "continued usage of any of the Marks," or "the System", or "an issue involving injunctive relief." (*Id.* 11.) Because their claims relate to their continued use of the System, the Youngs argue that they are excluded from the arbitration provision.

RFI, of course, has a different interpretation of the arbitration provision. As RFI reads it, Section 17(b) excludes from the arbitration agreement only claims for injunctive relief to prevent the Youngs' "continued usage of any of the Marks or the System." (Reply 5.) According to RFI, its interpretation of Section 17.7(b) is supported by the fact that its language precisely tracks the language in Paragraph 16.2 of the Agreement, which provides that upon expiration or earlier termination of the Agreement, the franchisee must "discontinue any further use of the Marks and the System." (*Id.*) To interpret Section 17.7(b) as broadly as the Youngs propose, RFI argues, would render the clause meaningless, because "any dispute between RFI and the Youngs, or any of its other franchisees for that matter, must in some way relate to the 'System.'" (Reply 4.)

3

In support of their argument to the contrary, the Youngs contend that even if the Court would find the arbitration clause ambiguous, it should be construed against RFI, its drafter, and their claims remain before the Court. (Br. Opp. 12-13.) Furthermore, they claim, should the Court find RFI's interpretation of Section 17.7(b) to be correct, the clause would be unconscionable, requiring the Youngs to submit any and all claims to arbitration, but allowing RFI to bring certain claims before the Court. (*Id*. 13-14.) Therefore, the Youngs argue, they should not in any event be made to resolve their claims against RFI through arbitration. Rather than stay the present case and compel arbitration, the Youngs request that the Court enter an order staying the arbitration proceeding to prevent potentially inconsistent decisions by the Court and the arbitrator. (*Id.* 14-15.)

**II. Analysis**

"The Federal Arbitration Act states that if the parties have an arbitration agreement and the asserted claims are within its scope, [a] motion to compel cannot be denied." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004).[1] Whether parties have agreed to arbitrate their claims is a question normally answered by the court rather than by an arbitrator, and governed by state law principles governing contract formation. *Continental Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

---

[1] The Federal Arbitration Act ("FAA") provides,
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2.

Here, the parties do not dispute that they entered into an arbitration agreement, but disagree as to whether the claims asserted in the instant case are of the subject matter the parties contractually agreed to arbitrate. Of course, "a party can be compelled to arbitrate only those matters that she has agreed to submit to arbitration." *James v. McDonald's Corp.*, 417 F.3d 672, 678 (7th Cir. 2005). However, as the Seventh Circuit Court of Appeals has explained, "once it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (holding that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Thus, "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83.

Where parties have agreed to arbitrate all disputes "arising out of" their agreement, the scope of the agreement to arbitrate "reaches all disputes having their origin or genesis in the contract." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l., Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993). Here, the parties contracted to resolve by arbitration, excepting only those types of claims enumerated in Section 17.7(b), "any unresolved dispute between [them] arising out of [the] Agreement." (Agreement, Section 17.7.) In this context, it is clear the claims asserted by the Youngs are subject to arbitration, unless they fall within the exception provided by Section 17.7(b).

In this action, the Youngs allege that RFI intentionally misrepresented it's business model or "System," particularly with regard to how many employees the Youngs would need to successfully run their franchise; what kind of pricing they would be offered and what competition

5

they would face; how much the Youngs could expect to earn in their business and what the "break even" point was; and what fees they could expect to pay to RFI. (Young Decl. ¶ 10; Am. Compl. ¶¶ 9-47.) The Youngs also claim that when they complained to RFI about these misrepresentations, RFI retaliated against them by threatening termination of their franchise and withdraw of additional support that had been provided by RFI to assist them in operating their franchise. (Am. Compl. ¶¶ 86-102; 121-131.)

In support of their argument that these claims fall within Section 17.7(b), the Youngs claim that each allegation relates to the System, and that all claims related to the System are excluded from the arbitration clause. (Br. Opp. 10.) Citing *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 586 N.W.2d 863 (1998), for the principle that the use of the word "or" is commonly used to denote the disjunctive, the Youngs argue that Section 17.7(b)'s language that "arbitration shall not be used for any dispute which involved Your continued usage of any of the Marks or the System or an issue involving injunctive relief" should be interpreted to exclude arbitration of "any dispute which involved the System," because the phrases "continued usage of any of the Marks" and "the System" are separated by the word "or." But the use of the disjunctive does not tell whether the modifying phrase "continued usage of" is intended to apply to only the word "Marks" or to both "Marks" and "the System". RFI claims that Section 17.7(b) of the Agreement excludes from the arbitration clause claims based on a franchisee's continued usage of either the Marks or the System, after they are no longer authorized to do so. Therefore, the focus of the parties' dispute in this case is whether the phrase "Your continued usage of any of" modifies the term "the System" in the clause.[2]

---

[2] Although the parties have disputed the scope of the language in Section 17.7(b) regarding issues "involving injunctive relief," I need not reach the issue here, where no request for injunctive relief is presently pending.

In resolving that issue, I am guided by the general rule of contract construction, acknowledged under Wisconsin law, that a "construction of the agreement which gives reasonable meaning to all provisions is preferable to one which leaves part of the language useless or inexplicable or creates surplusage." *Herchelroth v. Mahar*, 36 Wis. 2d 140, 147-148, 153 N.W.2d 6, 10 (Wis. 1967). Here, the interpretation of Section 17.7(b) offered by RFI gives reasonable meaning to all provisions of the Agreement. The Youngs' interpretation, on the other hand, does not. Were Section 17.7(b) interpreted to exclude from the parties' arbitration agreement "any dispute which involved the System," it is difficult to imagine a claim that would nonetheless come within Section 17.7(a)'s requirement that "any unresolved dispute between the parties arising out of [their] Agreement" be subject to arbitration. Indeed, the Agreement in its entirety concerns the Youngs' purchase and use of the System.

The Youngs note that "the arbitration agreement, after listing the issues exempted from arbitration, goes on to read, 'all of which issues will be submitted to the federal court,'" claiming that this language supports their interpretation of the clause, because "[t]he use of 'all' – as opposed to a word such as 'both' – indicates that there are at least three separate issues that are exempt from arbitration." (Br. Opp. 11.) However, RFI's interpretation is not inconsistent with the use of the word "all" in the provision, and permits a reading of Section 17.7(b) to encompass multiple issues involving the Youngs' continued use of the Marks, the Youngs' continued use of the System, and requests for injunctive relief.

Though I find the Youngs' claims against RFI fall within Section 17.7(a) and not Section 17.7(b) under the plain language of the Agreement, I note that even if ambiguous, Wisconsin law would require that the language of the clause "be construed in light of the parties' intent and the

7

purpose of the contract," demanding this same conclusion. *Wilke v. First Federal Sav. and Loan Ass'n of Eau Claire*, 108 Wis. 2d 650, 655, 323 N.W.2d 179, 181 (Wis. App. 1982). Because the general rule that an ambiguous clause should be construed against its drafter is to be followed only where consistent with the whole of the contractual language and the evident intent of the parties, that RFI drafted the Agreement is inconsequential. RFI's interpretation, and not the Youngs', is consistent with the parties' clear purpose to contract for the Young's use of the System and the arbitration of related claims. *Id*.

Having concluded that the Agreement requires arbitration of the Youngs' claims, I must address their argument that the arbitration clause is nonetheless unconscionable and unenforceable. According to the Youngs, under RFI's interpretation of the clause, "only RFI has the right to avoid arbitration while the Youngs would be forced to arbitrate any and all claims under any and all circumstances." (Br. Opp. 14.) However, the language of their arbitration clause permits either party to this case to avoid arbitration and seek the intervention of a federal court under certain circumstances. For example, were RFI to file an arbitration petition alleging the Youngs continued to use the Marks or System after they were no longer authorized to do so, the terms of the Agreement would permit the Youngs to seek injunctive relief in federal court declaring that their use remained authorized, rather than defend against the claim at arbitration.

Nothing within the Agreement renders the clause so "one-sided" as the clauses at issue in the cases cited by the Youngs in support of their claim that the clause is unconscionable. In *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 69-72, 290 Wis. 2d 514, 714 N.W.2d 155 (2006), the Supreme Court of Wisconsin found that an overly one-sided arbitration agreement may be found substantively unconscionable under some circumstances. In that case, the contract at issue "'saved and excepted' from binding arbitration all [plaintiff lender's] disputes, controversies, and

8

claims *against* the borrower," but "relegate[d] all the borrower's claims to arbitration." *Id*. at ¶ 64. In *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1286-87 (9th Cir. 2006), the Ninth Circuit Court of Appeals found an arbitration provision unconscionable where it required the plaintiff to submit to arbitration in a location considerably more advantageous for the defendants, while the defendants were permitted a judicial forum.

Here, aside from the limited exception contained in Section 17.7(b), both RFI and the Youngs are required to submit all claims to arbitration. Therefore, this case is readily distinguished from *Wisconsin Auto Title Loans* and *Nagrampa* I conclude that Section 17.7 of the Agreement is not an unconscionable provision.

### III. Conclusion

In sum, I find that the Agreement contains a valid and enforceable arbitration clause encompassing the claims at issue in this case. Accordingly, RFI's motion to compel arbitration is granted, and this action is hereby stayed pending the outcome of arbitration. The clerk of the court is directed to mark this action closed for statistical purposes. Furthermore, the parties are ordered to notify the Court in writing of the resolution of the arbitration when one has been reached. Within thirty-days following a final decision in the arbitration proceedings, any party may move to have this cause of action restored to the Court's docket. If no such motion is filed within the specified time frame, the case will be dismissed with prejudice.

**SO ORDERED** this ___15th___ day of July, 2008.

                                                    s/ William C. Griesbach
                                                   William C. Griesbach
                                                   United States District Judge