UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

1-800-RADIATOR OF WISCONSIN, LLC,

        Plaintiff,

   v.                                     Case No. 08-C-362

1-800-RADIATOR FRANCHISE INC. and
MICHAEL J. RIPPEY,

        Defendants.

---

**ORDER CONFIRMING IN PART AND
MODIFYING IN PART ARBITRATOR'S AWARD**

---

      Plaintiff 1-800-Radiator of Wisconsin, LLC ("ROW") filed this diversity action on April 29, 2008 alleging Defendants 1-800-Radiator Franchise, Inc. and its Chief Executive Officer Michael J. Rippey, (collectively "RFI") violated the Wisconsin Fair Dealership Law ("WFDL"), Wis. Stat. § 135.01 *et seq*., and made intentional misrepresentations in connection with the sale of a 1-800-Radiator franchise to Gary and Laurie Young, sole members of 1-800-Radiator of Wisconsin, LLC. The Franchise Agreement contained an arbitration clause, and on July 15, 2008, the Court granted RFI's motion to stay proceedings and compel the parties to arbitrate their dispute. Following a five-day hearing and full briefing on the issues, the Arbitrator issued his interim award on July 29, 2009, in which he dismissed ROW's claims for misrepresentation, but found in ROW's favor on its WFDL claims. The Arbitrator also dismissed RFI's claims against ROW for breach of contract that had been asserted in that proceeding, and awarded ROW a permanent injunction. On September 30, 2009, the Arbitrator issued his final award directing RFI to pay ROW attorneys' fees

of $167,243.75 and costs of $31,621.94, for a total award of $198,865.69. The case has returned to this Court on ROW's motion to confirm the Arbitrator's award.

RFI does not challenge the Arbitrator's findings of fact, legal conclusions or the amount of fees and costs he awarded. Nor does RFI take issue with the Arbitrator's conclusion that ROW is entitled to injunctive relief. RFI's sole objection is to the form of the permanent injunction set forth in the award, which ROW inserted almost verbatim into its proposed order. The language of the award reads:

> The Youngs are awarded a permanent injunction prohibiting RFI from unlawfully terminating, cancelling, nonrenewing or substantially changing the competitive circumstances of the Agreement. Under the terms of this injunction, any requirements must be imposed on a nondiscriminatory system-wide basis and the Youngs may not be terminated for failure to meet such requirements unless all other similarly situated dealers who fail to meet such nondiscriminatory system-wide requirements are also terminated.

(Doc. # 101-2 at 5.) RFI contends that this language violates the requirement that every order granting an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). RFI submitted its own proposed order which it contends specifically sets forth the injunctive relief to which ROW is entitled, and ROW has countered with its own alternative, which simply added the Arbitrator's specific conclusions that supported his rulings in favor of ROW and against RFI.

Although the parties do not address it as such, RFI's objection is really a challenge to the specific injunction the Arbitrator awarded ROW. This follows from the fact that ROW incorporated virtually the same language in its proposed order. Thus, despite RFI's suggestion that it is only objecting to form of ROW's proposed order, RFI's real complaint is with that portion of the Arbitrator's award setting out the injunctive relief to which he concluded ROW was entitled. RFI

2

contends that the form of the injunction awarded by the Arbitrator does not comply with Rule 65(d)(1). The question of whether an injunction complies with Rule 65(d)(1) is obviously a question of law, *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008), and on review of an arbitrator's award, the court's review of questions of law is de novo. *AGCO Corp. v. Anglin*, 216 F.3d 589, 594 (7th Cir. 2000).

The purpose of the specificity requirement of Rule 65(d) is to provide the enjoined party clear notice of what could result in an exercise of the judicial power of contempt, which even in its civil form is a "potent weapon." *Schering Corp. v. Illinois Antibiotics Co.*, 62 F.3d 903, 906 (7th Cir. 1995) (quoting *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)) (internal quotation marks omitted). In this connection, the Supreme Court has observed:

> A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past. But the mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged. This Court will strike from an injunction decree restraints upon the commission of unlawful acts which are thus dissociated from those which a defendant has committed.

*NLRB v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941) (citations omitted).

RFI relies principally on *Express Pub* in support of its argument that ROW's proposed orders vaguely and improperly tell defendants to obey the law, in this case the WFDL. It notes that the Arbitrator found that RFI violated the WFDL when it terminated ROW's franchise or, to use the WFDL's term, dealership, in retaliation for (1) ROW's previous request to be bought out; (2)

3

ROW's filing a federal lawsuit; and (3) ROW's refusal to sign a goodwill agreement. From this, it follows, RFI contends, that ROW is entitled to an injunction enjoining RFI from again terminating ROW's dealership or changing the competitive circumstances of its agreement with ROW for any of the three retaliatory motives identified by the Arbitrator. RFI maintains that it would be inappropriate to enjoin it from violating the WFDL by terminating or changing the competitive circumstances of ROW for reasons not addressed by the Arbitrator. If the language of the injunction were as broad as proposed by ROW, RFI contends it would be unable to address future breaches by ROW such as a failure to pay its debts to RFI, accept warranty returns, maintain normal business hours, or comply with provisions governing exclusive use RFI logos and marks.

The Court agrees with RFI that an injunction prohibiting RFI from "unlawfully terminating, cancelling, nonrenewing or substantially changing the competitive circumstances of the Agreement" does not comply with Rule 65(d)(1). The language of the WFDL is too vague and uncertain to permit the potent weapon of contempt to serve as a sanction for any and all potential violations. It provides that no dealership grantor may "terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership without good cause." Wis. Stat. § 135.03. But what does it mean to "substantially change the competitive circumstances"? The WFDL does not say, and given the uncertainty of the term "substantially," the only way to find out, except in clear cases, is through litigation. "Good cause" is defined in the WFDL as:

> (a) Failure by a dealer to comply substantially with essential and reasonable requirements imposed upon the dealer by the grantor, or sought to be imposed by the grantor, which requirements are not discriminatory as compared with requirements imposed on other similarly situated dealers either by their terms or in the manner of their enforcement; or
>
> (b) Bad faith by the dealer in carrying out the terms of the dealership.

4

Wis. Stat. § 135.02(4). But what does it mean to "comply substantially," and which requirements are "essential" and "reasonable"? What is "bad faith"? Again, except in extreme cases, the only way for a grantor to know whether his intended action toward a dealer violates the WFDL is to litigate the issue. Given this uncertainty, an order enjoining a grantor from "unlawfully terminating, cancelling, nonrenewing or substantially changing the competitive circumstances" of a Wisconsin dealership fails to provide the required "clear notice" of the conduct that could result in an exercise of the judicial power of contempt. *Schering Corp.*, 62 F.3d at 906.

It does not follow, however, that RFI should be enjoined only from violations that spring from the same motives that the Arbitrator found operative in this case. In fact, RFI's motivation for violating the WFDL is irrelevant and the use of its motive as a basis for prohibiting RFI's lawful conduct is beyond the authority of both the Arbitrator and this Court. It is true that the Arbitrator found that RFI's unlawful termination of ROW's dealership "was taken in retaliation for the Youngs' previous request to be bought out, their filing of a federal court lawsuit, and their refusal to sign the Goodwill Agreement." (Doc. 101-2 at 4.) However, it was not the retaliatory motivation that made RFI's termination unlawful under the WFDL; the termination was unlawful, first, because RFI had failed to provide ROW with the 90-day notice and 60-day right-to-cure that the statute requires, *see* Wis. Stat. § 135.04 (2005-06), and, second, it was without good cause under the terms of the Franchise Agreement. If RFI had given the required notice and right-to-cure, and good cause for termination actually existed, RFI's subjective motivation for terminating its relationship with ROW would not have mattered. These are private parties whose business relationship is governed by contract and the WFDL. Their motivations, as long as they are not themselves unlawful, i.e., on account of race, religion, sex, etc., are of no concern, and even then, for such motives to be

5

unlawful, there must be a specific law that prohibits such invidious discrimination in the kind of transaction at issue. *See*, e.g., Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (prohibiting such discrimination in employment).

For the foregoing reasons, the Court concludes that both the permanent injunction awarded by the Arbitrator and the proposed modification submitted by RFI fail to comply with Rule 65. The Arbitrator's language, advanced by ROW, is too broad and uncertain, and RFI's is too narrow and irrelevant. In *Express Pub* the Court set forth the standard that should guide a court in determining the breadth of an injunction:

> The breadth of the order, like the injunction of a court, must depend upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity or relation to those unlawful acts which the Board has found to have been committed by the employer in the past.

312 U.S. at 436-37; *see also Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008).

Here, the Arbitrator found that RFI had violated the WFDL by failing to provide ROW the 90-day notice of termination and the 60-day right to cure the claimed deficiency. That fact alone entitled ROW to relief. The Arbitrator went on to find that the specific grounds asserted by RFI for termination did not constitute good cause. These included: (1) ROW's failure to make the number of personal sales visits recommended in the uniform franchise offering circular (UFOC); (2) its failure to maintain the specific level of inventory RFI demanded; (3) its failure to achieve the specific level of sales that RFI demanded; and (4) its refusal to assist RFI in its acquisition of ACP, another distributor that was operating in ROW's territory, in the manner RFI insisted. But in finding the specific grounds asserted by RFI in this case insufficient to constitute good cause, the

6


Case 1:08-cv-00362-WCG    Filed 01/21/10    Page 6 of 8    Document 108

Arbitrator was not saying that ROW had no obligation to make some sales calls, maintain sufficient inventory, make some sales, and assist in acquisitions. The interim award states merely that the evidence offered failed to establish good cause in this case and fails to provide a basis for prohibiting RFI from seeking termination or other changes in the future, no matter what the circumstances.

Given the Arbitrator's findings, a permanent injunction enjoining RFI from terminating, cancelling, or failing to renew ROW's dealership unless it complies with the notice and right-to-cure provisions of the WFDL, Wis. Stat. § 135.04, is reasonable and appropriate. The notice and right to cure provisions of the WFDL are sufficiently clear to provide RFI notice of what actions will subject it to civil contempt. And implicit in the Arbitrator's discussion of the alleged breaches of the agreement and his award of a permanent injunction is a recognition that RFI may continue to seek to terminate ROW's dealership in the future. RFI should not be allowed to again attempt to unlawfully terminate ROW's dealership in this way without facing the penalties for civil contempt. The additional remedies already available under the WFDL, including damages for wrongful termination, and actual attorneys fees and costs incurred in an action for an injunction, Wis. Stat. § 135.06, as this case shows, are sufficient to protect ROW against other potential harm. Finally, to insure that the order is in full compliance with Rule 65, it will set forth the specific requirements of section 135.04 so as not to run afoul of the additional requirement that the order "describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C); *see also Dupuy v. Samuels*, 465 F.3d 757, 758 (7th Cir. 2006).

Taking all these matters into consideration, it is hereby ordered that the Arbitrator's Final

7

Case 1:08-cv-00362-WCG    Filed 01/21/10    Page 7 of 8    Document 108

Award is confirmed and the Arbitrator's Interim Award is confirmed in part and modified in part.

The Clerk is hereby directed to enter judgment as follows:

1. Defendants 1-800-Radiator Franchise, Inc., and Michael J. Rippey (collectively "RFI") violated the rights of Plaintiff 1-800 Radiator of Wisconsin LLC (hereinafter "ROW") under the Wisconsin Fair Dealership Law, Wis. Stat. §§ 135.03 and 135.04, and RFI is entitled to recover from ROW attorneys fees in the amount of $167,243.75 and costs in the amount of $31,621.94, for a total award of $198,865.69.

2. All other claims are dismissed with prejudice.

3. RFI is permanently enjoined from terminating, cancelling, or failing to renew the dealership of ROW for any reason other than the occurrence of an assignment for the benefit of creditors or bankruptcy, or nonpayment of sums due under the dealership, unless RFI provides ROW at least 90 days' prior written notice of termination, cancellation, or non-renewal. The notice shall state all the reasons for termination, cancellation, or non-renewal and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void. If the reason for termination, cancellation, or non-renewal is nonpayment of sums due under the dealership, RFI shall provide ROW written notice of such default, and shall give ROW at least 10 days in which to remedy such default from the date of delivery or posting of such notice.

4. The bond requirement in this Court's previous order granting ROW's motion for a preliminary injunction is released.

5. Pursuant to 28 U.S.C. § 1961, post judgment interest shall accrue on any unpaid amount of the judgment at the statutory rate from the date of the entry of judgment until paid.

Dated this ___21st___ day of January, 2010.

    s/ William C. Griesbach
William C. Griesbach
United States District Judge